RENDERED:  MARCH 11, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0849-MR

STETSON GIPSON                                                 APPELLANT

v.

APPEAL FROM BOYD CIRCUIT COURT
HONORABLE JOHN F. VINCENT, JUDGE
ACTION NO. 17-CR-00005

COMMONWEALTH OF KENTUCKY                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Stetson Gipson appeals an order of the Boyd Circuit

Court revoking his probation and sentencing him in accordance with his prior

guilty plea to third-degree burglary.  Upon review, we affirm because revocation

was appropriate pursuant to Kentucky Revised Statutes (KRS) 439.3106.

On March 20, 2017, the circuit court sentenced Gipson to five years of incarceration after he pled guilty to third-degree burglary but chose to place him on diversion. Terms of this diversion included that Gipson was to report to the Division of Probation & Parole and not commit any further crimes.

After a violation of supervision report was submitted that Gipson violated the terms of his diversion by being arrested for a new misdemeanor charge, on August 11, 2017, the circuit court restored Gipson to the original terms of the diversion. However, according to new violation of supervision reports, Gipson continued to violate the terms of his diversion in that he was charged with a new misdemeanor, then arrested for a new misdemeanor, and then absconded.

On June 22, 2018, during the revocation hearing based on those reports, Gipson was asked to explain why he had absconded for a period of nearly eight months – after he had already been jailed months earlier for contempt due to absconding on a prior occasion. Gipson's answer was: "I just didn't, didn't care."

Thereupon, the circuit court explained that if it chose to continue Gipson on supervision, he needed to understand that his chances were running out. Therefore, it warned him as follows:

> CIRCUIT COURT: Now understand this. If you're back – you need to cooperate with the Department. If you're back one more time, that's going to be your third strike. And then the Court's really not going to have any option but to send you away for five years in the state penitentiary. Do you understand that?

GIPSON:  Yes, sir.

The circuit court then revoked Gipson's diversion, placed Gipson on probation for five years, and ordered him to serve fifty days for contempt of court.

However, Gipson's troublesome behavior continued.  On August 1, 2018, a supervision report was filed indicating that after Gipson was released from jail, rather than reporting to Probation & Parole as required, he absconded, not reporting until he was arrested pursuant to the supervision report.  Therefore, Gipson was without supervision from August 1, 2018, until arrested on March 29, 2019.

Following his revocation hearing, the circuit court entered a revocation order on May 10, 2019.  In that order, the circuit court, after detailing the pertinent history involving supervision of Gipson, explained its decision as follows:

> Based upon the above history, it is clear that Mr. Gipson had violations of his diversion and his subsequently Ordered probation.  Mr. Gipson even failed to report after being jailed for contempt charge for probation violations. This is a pattern of violating release conditions. Progressive discipline has been applied without success. The Court has previously attempted other sanctions which have failed.  Therefore, the Defendant constitutes a significant risk to the community at large as he has been arrested on at least two occasions while in violation of his diversion, and he cannot appropriately be managed because he fails to report to the Department of Probation & Parole as directed.  Therefore, based upon the foregoing, the probation of the Defendant is revoked and

he is remanded to the Department of Corrections for service of his five (5) year sentence pursuant to the terms of the original Judgment of March 17, 2017.

We review a trial court's decision to revoke probation for an abuse of discretion. *See Southwood v. Commonwealth*, 372 S.W.3d 882, 884 (Ky.App. 2012). The trial court abuses its discretion only when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* Put another way, we will not hold that a trial court abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law. *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004).

On appeal, Gipson's arguments are two-fold. First, he takes issue with the fact that the circuit court's revocation order focused in part upon his history of violations. Gipson contends the circuit court denied him due process and placed him in "double jeopardy" by revoking his probation based on what he asserts was his "conduct that occurred prior to being on probation."

We disagree. For a trial court to revoke probation consistently with due process, "there must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met." *Commonwealth v. Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019) (internal quotation marks, brackets, and citation omitted).

Here, Gipson's probation was not revoked based upon *prior* conduct for which he had already been disciplined. As the circuit court noted in its order, Gipson faced revocation because he committed a *new* violation of the terms of his release by absconding from August 1, 2018, until his arrest on March 29, 2019.

Alternatively, if Gipson's argument is that the circuit court should not have considered his history of prior violations in its assessment of whether the statutory criteria for revocation was met, he is incorrect. To paraphrase KRS 439.3106(1)(a), the statutory criteria required that the circuit court make two findings: (1) that Gipson's failure to comply with terms of his probation constituted a significant risk to prior victims or the community at large; and (2) that Gipson could not be appropriately managed in the community. Gipson's history of prior violations and record of noncompliance was relevant to these findings. *See, e.g.*, *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (explaining that "[w]hile [the probationer's] criminal history could not be the sole basis for his revocation, it was appropriately considered when assessing the risk posed by his continued probation.").

For his second argument, Gipson contends that substantial evidence does not support the circuit court's findings relative to the above-stated statutory criteria. Again, we disagree. Regarding the latter requisite finding, the court indicated it had previously issued other less severe sanctions, but Gipson

repeatedly failed to comply with the terms of his pretrial diversion and probation. Indeed, his latest and perhaps most egregious failure was willful based on his own admission that he "just didn't . . . care."

As to the former finding, Gipson claims he posed no risk to anyone in the community. He emphasizes that while he was absconding from August 1, 2018, until his arrest on March 29, 2019, his family life "stabilized" and that he had acquired housing and steady employment. He also argues the circuit court failed to "fully consider" this aspect of KRS 439.3106(1)(a) in its order.

To the extent Gipson is arguing the circuit court erred because it failed to adequately connect the evidence to each prong of KRS 439.3106(1)(a), he is incorrect. Even though "the statute requires a trial court to consider whether a probationer's failure to abide by a condition poses a significant risk to prior victims or the community at large[,] [n]either KRS 439.3106 nor *Andrews* require anything more than a finding to this effect supported by the evidence of record." *McClure v. Commonwealth*, 457 S.W.3d 728, 733 (Ky.App. 2015) (internal quotation marks and citation omitted).

Moreover, KRS 439.3106(1)(a) does not require a probationer to commit "some heinous act before he can be found to be a risk to someone other than himself." *McClure*, 457 S.W.3d at 733. In *McClure*, for example, a

probationer's attempt to cheat on a drug test was deemed sufficient for revocation purposes. There,

> McClure was convicted of burglary and theft of a controlled substance; he was granted the privilege of probation; he used a controlled substance in violation of the terms of that probation and was subjected to further, more frequent testing. In response to this increased supervision, he went to great lengths to undermine the efforts of those supervising him by carrying someone else's urine in a syringe concealed in his pants.

*Id. See also Embry v. Commonwealth*, 561 S.W.3d 360 (Ky.App. 2018) (affirming revocation where probationer willfully and repeatedly failed to pay child support).

Probation is a form of supervised release. If a probationer is unwilling to be supervised and instead undermines the process, then probation serves no purpose. Here, Gipson absconded for a period of nearly eight months – despite progressive discipline, a prior fifty-day jail sentence for absconding, and the circuit court's warning that he had effectively run out of chances. Considering his demonstrated unwillingness to be supervised, in conjunction with his accrual of additional charges while on supervised release, we cannot say the circuit court abused its considerable discretion by deeming Gipson a significant risk and accordingly revoking his probation. We therefore affirm.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Adam Meyer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

James C. Shackelford
Assistant Attorney General
Frankfort, Kentucky